T.C. Memo. 2002-99


UNITED STATES TAX COURT


MICHAEL J. YACKSYZN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10276-01L.          Filed April 9, 2002.


Michael J. Yacksyzn, pro se.

<u>Wendy S. Harris</u> and <u>Karen Lynne Baker</u>, for respondent.


MEMORANDUM OPINION


ARMEN, <u>Special Trial Judge</u>:  This matter is before the Court on respondent's Motion To Dismiss For Failure To State A Claim And To Impose A Penalty Under I.R.C. §6673.[1]  As explained in detail below, we shall grant respondent's motion.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

A. Petitioner's Form 1040 for 1997

On or about April 15, 1998, petitioner submitted to respondent a Form 1040, U.S. Individual Income Tax Return, for the taxable year 1997. On his Form 1040, petitioner listed his filing status as single and described his occupation as "technical skills trainer".

Petitioner entered zeros on every line of the income section of his Form 1040, specifically including line 7 for wages, line 16 for pensions and annuities, and line 22 for total income. Petitioner also entered a zero on line 39 for tax and a zero on line 53 for total tax. Petitioner then claimed a refund in the amount of $11,229 consisting of withheld Federal income tax.

Petitioner attached to his Form 1040 a Wage and Tax Statement, Form W-2, and three Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. The Form W-2 was from Kerr-McGee Chemical Corp.; it disclosed the payment to petitioner of wages in the amount of $46,659.17 and the withholding of Federal income tax in the amount of $9,253.02. The first Form 1099-R was from Defense Finance and Accounting Service; it disclosed the payment to petitioner of a taxable distribution in the amount of $17,696.88 and the withholding of Federal income tax in the amount of $1,859.28. The second Form 1099-R was from Putnam

Fiduciary Trust Co.; it disclosed the payment to petitioner of a taxable distribution in the amount of $585.21 and the withholding of Federal income tax in the amount of $117.04. The third Form 1099-R was from Kerr-McGee Corp. Savings Investment Plan; it disclosed the payment to petitioner of a taxable distribution in the amount of $171.76 and the withholding of no Federal income tax.

Finally, petitioner attached to his Form 1040 a 2-page typewritten statement that stated, in part, as follows:

> I, Michael J. Yacksyzn, am submitting this as part of my 1997 income tax return, even though I know that no section of the Internal Revenue Code:
>
> 1) Establishes an income tax "liability" * * * ;
>
> 2) Provides that income taxes "have to be paid on the basis of a return" * * * .
>
> 3) In addition to the above, I am filing even though the "Privacy Act Notice" as contained in a 1040 booklet clearly informs me that I am not required to file. It does so in at least two places:
>> a) In one place, it states that I need only file a return for "any tax" I may be "liable" for. Since no Code Section makes me "liable" for income taxes, this provision notifies me that I do not have to file an income tax return.
>
> * * * * * * *
>
> 6) Please note, that my 1997 return also constitutes a claim for refund pursuant to Code Section 6402.
>
> 7) It should also be noted that I had "zero" income according to the Supreme Court's definition of income * * * .
>
> 8) I am also putting the IRS on notice that my 1997 tax return and claim for refund does not constitute a

"frivolous" return pursuant to Code Section 6702.

\* \* \* \* \* \* \*

10) In addition, don't notify me that the IRS is
"changing" my return, since there is no statute that
allows the IRS to do that.

B.  Respondent's 30-day Letter and Petitioner's Response

By letter dated September 2, 1999, respondent sent

petitioner a 30-day letter proposing changes to his Form 1040 for

1997.  Respondent's cover letter advised petitioner that "The

United States Supreme Court has consistently ruled that the

income tax laws are constitutional."

By letter dated October 1, 1999, petitioner replied,

essentially arguing that because he reported an income tax

liability of zero on his 1997 Form 1040, no greater amount may

ever be assessed against him.

C.  Respondent's Deficiency Notice and Petitioner's Response

On November 5, 1999, respondent issued a notice of

deficiency to petitioner.  In the notice, respondent determined a

deficiency in the amount of $14,972.20 in petitioner's Federal

income tax for 1997 and an accuracy-related penalty under section

6662(a) in the amount of $748.64.[2]  The deficiency in income tax

was based on respondent's determination that petitioner failed to

---

[2]  Insofar as petitioner's ultimate tax liability was
concerned, respondent gave petitioner credit for the amounts
withheld from his wages and pension distributions.  However, we
note that the determination of a statutory deficiency does not
take such withheld amounts into account.  See sec. 6211(b)(1).

report: (1) Wage income in the amount of $46,659 received by petitioner from Kerr-McGee Corp.; and (2) taxable pension distributions in the amounts of $17,696, $585, and $171 received by petitioner from Defense Finance and Accounting Service, Putnam Fiduciary Trust Co., and Kerr-McGee Corp. Savings Investment Plan, respectively.

By registered letter dated January 27, 2000, petitioner wrote to respondent, acknowledging receipt of the notice of deficiency dated November 5, 1999, but challenging respondent's authority "to send me the Notice in the first place."

Petitioner knew that he had the right to contest respondent's deficiency determination by filing a petition for redetermination with this Court.  However, petitioner chose not to do so.  Accordingly, on May 1, 2000, respondent assessed the determined deficiency and accuracy-related penalty, as well as statutory interest.  On that same day, respondent notified petitioner that he owed $5,281.87 and requested that he pay such amount.[3]  Petitioner failed to do so.

---

[3]  The May 1, 2000, notice and demand for payment computed the balance due as follows:

| | |
|---|---:|
| Assessed deficiency | $14,972.20 |
| Assessed penalty | 748.64 |
| Assessed interest | 790.03 |
| Subtotal | 16,510.87 |
| Less: withholding | -11,229.00 |
| Balance due | 5,281.87 |

D.  Respondent's Final Notice and Petitioner's Response

On October 12, 2000, respondent mailed to petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing.  The Final Notice was issued in respect of petitioner's outstanding liability for 1997.

On October 31, 2000, petitioner filed with respondent Form 12153, Request for a Collection Due Process Hearing.  The request included, inter alia, a challenge to the existence of the underlying tax liability for 1997 on the ground that petitioner was never informed of "the statute that makes me 'liable to pay' the taxes at issue".  In this regard, petitioner alleged that "I did not receive a (valid) notice of deficiency in connection with the year at issue."

E.  The Appeals Office Hearing

By letter dated May 9, 2001, respondent's Appeals officer wrote to petitioner to schedule an administrative hearing pursuant to petitioner's October 31, 2000 request.  In his letter, the Appeals officer stated, in part, as follows:

> I have verified the validity of the assessment through the examination of a complete computer transcript. Enclosed are copies of transcripts of your accounts for the periods at issue.  I have no further legal obligation to consider any challenge to the validity of the assessment in the absence of independent proof that the assessment was defective in some manner.

On June 14, 2001, petitioner attended an administrative hearing conducted by the Appeals officer.  At the hearing,

petitioner requested that the Appeals officer identify the statutory provisions establishing petitioner's liability for Federal income tax and provide verification that all applicable laws and administrative procedures were followed in the assessment and collection process.  Petitioner was again informed that the transcripts of account provided to him before the hearing were sufficient to satisfy the verification requirement of section 6330(c)(1).  Petitioner was also informed that he would not be permitted to raise constitutional challenges to his underlying tax liability for 1997.  The Appeals officer terminated the hearing after petitioner declined to discuss alternatives to collection.[4]

F.  Respondent's Notice of Determination

On July 12, 2001, respondent's Appeals Office issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.  In the notice, the Appeals Office stated that respondent's determination to proceed with collection by way of levy should be sustained.  In an attachment to the notice, the Appeals Office stated, in part, as

---

[4]  Petitioner stated that "I'll pay the tax, just show me the law that requires me to pay the tax."  The Appeals officer identified sec. 1 as "the law that requires [petitioner] to pay this tax.".  In this regard, sec. 1(c) imposes a tax on the taxable income of unmarried individuals.

Near the end of the hearing, the Appeals officer also provided petitioner with a copy of Pierson v. Commissioner, 115 T.C. 576 (2000), and suggested that he read that opinion.  The Pierson case is mentioned infra.

follows:

> You requested a Collection Due Process Hearing under
> IRC §6330 objecting to proposed levy action.  The
> arguments you submitted with your request for a
> hearing, and at your hearing have been determined by
> the courts to be frivolous and without merit.  You did
> not challenge the appropriateness of the proposed
> collection action or raise any collection alternatives.
>
> You are precluded from raising the underlying liability
> as an issue under IRC §6330(c)(2)(B) because you were
> previously provided an opportunity to dispute the tax
> liability and did not elect to do so.

G.  Petitioner's Petition

On August 14, 2001, petitioner filed with the Court a

Petition for Lien or Levy Action seeking review of respondent's

notice of determination.[5]  The petition includes allegations

that:  (1) The Appeals officer failed to obtain verification from

the Secretary that the requirements of any applicable law or

administrative procedure were met as required under section

6330(c)(1); (2) the Appeals officer failed to identify the

statutes making petitioner liable for Federal income tax; and (3)

petitioner was denied the opportunity to challenge (a) the

appropriateness of the collection action; and (b) the existence

or amount of his underlying tax liability.

H.  Respondent's Motion To Dismiss

As stated, respondent filed a Motion To Dismiss For Failure

To State A Claim And To Impose A Penalty Under I.R.C. §6673.

---

[5]  At the time that the petition was filed, petitioner
resided in Henderson, Nevada.

Respondent contends that petitioner is barred under section 6330(c)(2)(B) from challenging the existence or amount of his tax liability in this proceeding because he received a notice of deficiency.  Respondent also contends that the Appeals officer's review of the transcripts of account, which were provided to petitioner before the Appeals Office hearing, satisfied the verification requirement of section 6330(c)(1).  Finally, respondent contends that petitioner's behavior warrants the imposition of a penalty under section 6673.

Petitioner filed an Objection to respondent's motion. Thereafter, pursuant to notice, respondent's motion was called for hearing at the Court's motions session in Washington, D.C.

Discussion

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, the Secretary is authorized to collect such tax by levy on the person's property.  Section 6331(d) provides that at least 30 days before enforcing collection by way of a levy on the person's property, the Secretary is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person.

Section 6330 generally provides that the Commissioner cannot proceed with collection by way of a levy until the person has

been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination.  See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing.  In sum, section 6330(c) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection.  Section 6330(c)(2)(B) provides that the existence and amount of the underlying tax liability can be contested at an Appeals Office hearing only if the person did not receive a notice of deficiency for the taxes in question or did not otherwise have an earlier opportunity to dispute the tax liability.  See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra.  Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate.

A.  Dismissal for Failure To State a Claim

Petitioner argues that the assessment made against him is invalid because respondent failed to demonstrate that petitioner is subject to the Federal income tax.  Petitioner's argument fails for two reasons.  First, there is no dispute in this case

that petitioner received the notice of deficiency dated November 5, 1999, and disregarded the opportunity to file a petition for redetermination with this Court.  See sec. 6213(a).  Under the circumstances, section 6330(c)(2)(B) bars petitioner from challenging the existence or the amount of his underlying tax liability for 1997 in this collection review proceeding.

In addition to the bar imposed by section 6330(c)(2)(B), petitioner's argument that he is not subject to the Federal income tax is frivolous and groundless.  See Goza v. Commissioner, supra.  As the Court of Appeals for the Fifth Circuit has remarked: "We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit."  Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984).  Suffice it to say that petitioner is a taxpayer who is subject to the Federal income tax on his wages and pensions.  See secs. 1(c), 61(a)(1), (11), 7701(a)(1), (14); Nestor v. Commissioner, 118 T.C. 162, 165 (2002).

Petitioner next argues that the Appeals officer failed to obtain verification from the Secretary that the requirements of all applicable laws and administrative procedures were met as required by section 6330(c)(1).  We reject petitioner's argument because the record establishes that the Appeals officer obtained

and reviewed transcripts of account for petitioner's taxable year 1997.

Federal tax assessments are formally recorded on a record of assessment. Sec. 6203. "The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." Sec. 301.6203-1, Proced. & Admin. Regs.

Section 6330(c)(1) does not require the Commissioner to rely on a particular document to satisfy the verification requirement imposed therein. Duffield v. Commissioner, T.C. Memo. 2002-53; Kuglin v. Commissioner, T.C. Memo. 2002-51. In this regard, we observe that the transcripts of account on which the Appeals officer relied, and which he furnished to petitioner before the hearing, contained all the information prescribed in section 301.6203-1, Proced. & Admin. Regs. See Duffield v. Commissioner, supra; Kuglin v. Commissioner, supra.[6]

Petitioner has not alleged any irregularity in the assessment procedure that would raise a question about the validity of the assessments or the information contained in the transcripts of account. See id.; Mann v. Commissioner, T.C. Memo. 2002-48. Accordingly, we hold that the Appeals officer

---

[6] We note that sec. 6330(c)(1) also does not require the Commissioner to give the taxpayer a copy of the verification. Nestor v. Commissioner, 118 T.C. 162, 166 (2000).

satisfied the verification requirement of section 6330(c)(1).
Cf. Nicklaus v. Commissioner, 117 T.C. 117, 120-121 (2001).

Petitioner has failed to raise a spousal defense, make a
valid challenge to the appropriateness of respondent's intended
collection action, or offer alternative means of collection.
These issues are now deemed conceded.  Rule 331(b)(4).  In the
absence of a justiciable issue for review, we conclude that
petitioner has failed to state a claim for relief, and we shall
grant that part of respondent's motion that moves to dismiss.

B.  Imposition of a Penalty Under Section 6673

We turn now to that part of respondent's motion that moves
for the imposition of a penalty on petitioner under section 6673.

As relevant herein, section 6673(a)(1) authorizes the Tax
Court to require a taxpayer to pay to the United States a penalty
not in excess of $25,000 whenever it appears that proceedings
have been instituted or maintained by the taxpayer primarily for
delay or that the taxpayer's position in such proceeding is
frivolous or groundless.  The Court has indicated its willingness
to impose such penalty in lien and levy cases.  Pierson v.
Commissioner, 115 T.C. 576, 580-581 (2000); Watson v.
Commissioner, T.C. Memo. 2001-213 (imposing a penalty in the
amount of $1,500).

We are convinced petitioner instituted the present
proceeding primarily for delay.  In this regard, it is clear that

petitioner regards this proceeding as nothing other than as a vehicle to protest the tax laws of this country and to espouse his own misguided views, which we regard as frivolous and groundless. In short, having to deal with this matter wasted the Court's time, as well as respondent's.

Under the circumstances, we shall grant that part of respondent's motion that moves for the imposition of a penalty in that we shall impose a penalty on petitioner pursuant to section 6673(a)(1) in the amount of $1,000.

In order to give effect to the foregoing,

An appropriate order granting respondent's motion and decision will be entered.